IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 23-cr-00273-RMR

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**CHAD EDWARD KEITH**,

        Defendant.

---

### DEFENDANT'S SENTENCING STATEMENT

---

Mr. Chad Keith, through his attorney Laura H. Suelau, respectfully asks this Court to impose a sentence of 21 months followed by three years of supervised release. A 21 month sentence sufficiently accounts for the number of firearms involved in the instant offense, but also recognizes Mr. Keith's mitigating history and characteristics. Specifically, despite a difficult early adulthood, Mr. Keith has been a law-abiding citizen and small business owner for much of the past two decades. Additionally, Mr. Keith is in remission from non-Hodgkin's lymphoma – a condition that has left residual effects and requires frequent monitoring. For those reasons, a bottom of the guidelines sentence is the sufficient, but not greater than necessary, sentence in this case.

    **I.**    **Mr. Keith's relevant history and characteristics support a sentence of 21 months.**

Mr. Keith was born to Tony and Lisa Keith in Coushatta, Louisiana. Mr. Keith is the oldest of five children. Tony Keith worked at the Paper Mill is Coushatta where the average salary in 2024 was $18/hour, or about $36,000 annually.[1] Despite their meager resources, Mr. Keith enjoyed a happy

---

[1] *See* Zip Recruiter, https://www.ziprecruiter.com/Salaries/Paper-Mill-Salary--in-Louisiana

1

upbringing. He spent most of his time outside hunting, trapping, fishing, and playing sports. When Mr. Keith was 13 years old, his mother died after a battle with blood cancer. Her passing at a formative age for Mr. Keith was difficult contributed to his struggles in high school.

When Mr. Keith was a senior in high school, and less than two months after his eighteen birthday, he engaged in a common rite of passage – playing a prank. In his case, he put firecrackers around his school, one exploded in a toilet. The school did not just reprimand him, he was reported to law enforcement, arrested and charged with a federal felony. After the FBI investigated and found the firecrackers did not meet the federal definition of "destructive device," the federal charges were dropped. Mr. Keith pled guilty to a misdemeanor offense in Louisiana related to the prank, but his consequences were not just legal. The school expelled Mr. Keith and what should have been his senior year was marred by the arrest, charges, and investigation. Adding to the turmoil, the investigation into the firecrackers revealed that Mr. Keith was the victim of sexual misconduct by a teacher. The case that received widespread attention in his school and community.

Two years later, in 2002, the FBI again Mr. Keith investigated for possession of destructive devices. This time, at 20 years old, he made and used three pipe bombs to "stun fish" in a pond near his home. This was common practice in his rural town. Mr. Keith cooperated with law enforcement and led them to the pond. Law enforcement drained the pond, and the bombs were located. No other bombs or explosive devices were found during a search of Mr. Keith's home. Despite his limited criminal history, young age, and the non-aggravated nature of the offense, the Court in Louisiana sentenced Mr. Keith to 48 months in the Bureau of Prisons (BOP).

Ample research demonstrates that the brain does not fully mature until age 25. Therefore, the type of risky behavior Mr. Keith engaged in at 18 and 20 years old is common during this age of

"psychosocial maturity."[2] Just as developing brains do not process culpability in the same manner as mature brains, incarceration for youthful offenders hinders brain develop, and is particularly traumatic. Incarceration at such an early age can hinder future success and lead to unemployment and lack of education. *Id.* To his major credit, after his release from the BOP, Mr. Keith demonstrated remarkable resilience.

Except for misdemeanor convictions in 2009 and 2013, Mr. Keith has led a successful adult life despite the setbacks in his early adulthood. First, he completed his GED in the BOP in 2004. Thereafter, he helped other inmates to obtain their GED. After his release, he worked hard to obtain vocational training in engineering, robotics, logistics, and other areas. He employed his skills in oil fields in Louisiana until 2016 when he moved to Colorado. Upon moving to Colorado, Mr. Keith founded two businesses, AH Services and Clan Keith, Inc. Through those businesses, he worked on all manner of commercial and residential construction projects. Later, Mr. Keith maintained those businesses through a devastating personal setback – cancer.

## II. Mr. Keith's medical history supports a bottom of the guidelines sentence.

This Court must fashion a sentence that provides Mr. Keith with the needed "medical care," and the BOP does not have the resources to attend sufficiently to chronic medical issues. 18 U.S.C. § 3553(a)(2). In 2018, Mr. Keith began to experience abdominal pain. Initially, he was assured it was just that – low level and common stomach pain. Then, after losing 30 pounds over the course of eight months, Mr. Keith reported to the Emergency Room in debilitating pain.[3] A CT scan found multiple

---

[2] *See* Annie E. Casey Foundation, *How Youth Incarceration Undermines Public Safety* (Jan 18, 2023) (summarizing findings of report from The Sentencing Project).

[3] Counsel received and reviewed over 200 pages of medical records from Rocky Mountain Cancer Centers. Given the volume of the records, she does not include them as an Exhibit, but will provide them to the Court upon request. Counsel provided a summary report to probation for inclusion as an Exhibit to the PSR.

masses in his abdomen and upper body, the largest measuring 13 centimeters. One mass ruptured and was the cause of Mr. Keith's pain. Mr. Keith was diagnosed with non-Hodgkin's lymphoma in May 2019 and began chemotherapy on June 5, 2019. He underwent ten total cycles of chemotherapy.

As compared with Hodgkin's lymphoma which presents in the upper body and progresses in a predictable fashion, non-Hodgkin's lymphoma is more difficult to detect and treat.[4] Contributing to the delay in Mr. Keith's diagnosis is the fact that he was just 37 years old. Most cases of non-Hodgkin's lymphoma are found in patients over the age of 55. The probable cause of Mr. Keith's cancer is glyphosate, a weed killer chemical he used during a job as a teenager.

After his treatment ended in 2020, Mr. Keith returned to Rocky Mountain Cancer center every few months for evaluation – including regular imaging. He also underwent in a regimen of Rituxan maintenance therapy every 8 weeks. That therapy continued until his arrest in May 2023. Rituxan is an infusion used for continued treatment of non-Hodgkin's lymphoma. Despite being in remission, Mr. Keith suffers ongoing nausea, and painful neuropathy in his legs. Prior to his incarceration, he was prescribed marijuana and gabapentin to manage those symptoms. Since his detention at the Federal Detention Center, a BOP facility, Mr. Keith has not had access to marijuana, gabapentin, Rituxan infusion, or imaging. His cancer is going unmonitored and his symptoms untreated.

A 2016 report from the Office of the Inspector General outlined the challenges preventing the BOP from providing adequate, let alone effective, medical care to inmates:

> [R]ecruitment of medical professionals is one of the BOP's greatest challenges and staffing shortages limit inmate access to medical care, result[ing] in an increased need to send inmates outside the institution for medical care, and [contributing] to increases in medical costs…[f]rom fiscal year (FY) 2010 to FY 2014, the BOP's total medical

---

[4] *See* Moffit Cancer Center, https://www.moffitt.org/cancers/lymphomas-hodgkin-and-non-hodgkin/faqs/hodgkin-lymphoma-vs-non-hodgkin-lymphoma/#:~:text=Non%2DHodgkin%20lymphoma%20may%20arise,easier%20to%20recognize%20and%20treat. (accessed Jan. 15, 2024).

4

>staff was approximately 17 percent less than what the BOP projected was necessary to provide what it considers to be 'ideal' care."[5]

Troublingly, the OIG found the BOP failed to disclose what it considered "ideal care." A 2022 Audit of the Bureau of Prisons found little has changed since 2016 and that "the BOP does not have reliable, consistent process in place to evaluate timeliness of quality of inmate healthcare."[6] The consequences of Mr. Keith not receiving quality healthcare are potentially dire: 20-40% of those with non-Hodgkin's lymphoma experience relapse.[7] This Court should consider the consequences of Mr. Keith not receiving adequate and timely health care for the entirety of his sentence and fashion a sentence accordingly.

### III. Mr. Keith is not the dangerous person the FBI believed.

This case began in 2020 when local authorities received a tip based on unreliable hearsay about Mr. Keith. The tipster used inflammatory language and intimated that Mr. Keith was engaged in all manner of dangerous and threatening conduct. Over the next three years, the FBI extensively investigated Mr. Keith. During that time, Mr. Keith engaged in the at times distasteful exercise of free speech. He was not, however, building a radical militant school, hatching plans to target law enforcement, or anything of that nature. The fact that he holds views that are unsympathetic or

---

[5] U.S. Dept. of Justice, Office of the Inspector Gen., Review of Federal Bureau of Prisons Medical Staffing Challenges (Mar. 2016); *see also id.* at 15 ("The BOP's inability to recruit and retain medical professionals has led to institutions operating at unfavorable staffing levels."); U.S. Dept. of Justice, Office of the Inspector Gen., The Impact of an Aging Inmate Population on Federal Bureau of Prisons, at 17 (revised Feb. 2016) (explaining the difficulties of hiring medical staff in urban and rural areas).

[6] U.S. Dept. of Justice, Office of the Inspector Gen., Audit of the Federal Bureau of Prisons Comprehensive Medical Services Contracts Awarded to the University of Massachusetts Medical School (March 2022).

[7] Elis, A., et. al, Detection of relapse in non-Hodgkin's lymphoma: role of routine follow-up studies https://pubmed.ncbi.nlm.nih.gov/11835330/.

5

unpopular to some, does not render them illegal.[8] Nor should Mr. Keith be punished based on his thoughts, ideas, and words.

Instead, Mr. Keith should be punished for his actual conduct: possessing ten firearms and various ammunition. Hundreds of hours of recorded conversation with an undercover source (UC) revealed only that Mr. Keith was a man engaging in activity from which he was prohibited: owning and shooting guns. Mostly, Mr. Keith shot the firearms on his rural property with friends. In addition to shooting guns with the UC, he invited the man over for dinner, shared his various hobbies and interests, and even assisted with remodeling the man's home. During those hundreds of hours, Mr. Keith did not threaten the UC or anyone else. He also did not commit other crimes with the firearms. Indeed, Mr. Keith's last felony conviction was in 2002, 22 years ago. His last criminal conviction of any kind occurred in 2013. Here, Mr. Keith engaged in a hobby that violated the law and he should be sentenced accordingly.

**IV.     Plan for success upon release.**

As the result of the instant offense, Mr. Keith sold his property in rural Cotopaxi, Colorado. He also lost his tools and most of his possessions. Most troubling to Mr. Keith, his character has come under attack. This case received wide-spread media coverage filled with reiterations of untrue claims that he is a "white supremacist" and planned to start an antisemitic school.[9] Mr. Keith maintains that he is not a white supremacist, had no nefarious plans, and is kind and respectful person to all people. However, he can hardly correct every untrue story on the internet and this case will follow him for

---

[8] Foreign Policy, *The Problem with making Hate Speech Illegal,* Aug. 14, 2017("In fact, most of what we consider hate speech — slurs, insults, and provocations — are shielded from bans and punishment by the First Amendment…").

[9] *See* CBS Colorado, *Self-proclaimed white supremacist, convicted felon pleads guilty to weapons charges in Colorado* (Oct. 18, 2023).

the rest of his life. Each of those collateral consequences will make it more difficult for Mr. Keith to rebuild his life upon his release from prison, but he is up for the task.

Upon release Mr. Keith plans to restart his construction business. Although his ability to work is hampered by his daily pain and nausea, he is a hard worker and finds joy in staying busy. His little sister, Chelsea Coshatta and her family are in the processing of moving to Colorado and will be an integral part of his support system. Over the years, Mr. Keith has performed many acts of service for those in his community and knows those people will return the favor as he rebuilds his life and business.[10]

**V.      Conclusion.**

A sentence of 21 months' incarceration is the sufficient but not greater than necessary sentence in this case. This crime effectively forced Mr. Keith to start his life over at 44 years old and he knows future possession of firearms will only bring more consequences and longer sentences. No longer sentence is necessary to deter Mr. Keith.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Laura H. Suelau
LAURA H. SUELAU
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
laura_suelau@fd.org
Attorney for Defendant

---

[10] *See* Doc. 10 (Rebecca Duncan Letter).

## CERTIFICATE OF SERVICE

   I hereby certify that on January 16, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

 Julia Martinez, Assistant United States Attorney
 Email: Julia.Martinez@usdoj.gov

   I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

 Chad Keith (via U.S. Mail)

              s/ Laura Suelau
              LAURA SUELAU
              Assistant Federal Public Defender
              633 17th Street, Suite 1000
              Denver, CO  80202
              Telephone: (303) 294-7002
              FAX: (303) 294-1192
              laura_suelau@fd.org
              Attorney for Defendant