**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 23-cr-00273-RMR

UNITED STATES OF AMERICA,

     Plaintiff,

v.

CHAD EDWARD KEITH,

     Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT**

---

     The United States of America, by and through undersigned counsel, respectfully submits the following response to the defendant's Sentencing Statement, Doc. 42. For the reasons that follow, the government intends to seek a sentence of 30 months, at the top of the undisputed guidelines range, followed by three years of supervised release, consistent with the recommendation made by Probation, Doc. 43-1.  A sentence of 21 months, below the low end of the guidelines range and as requested by the defendant,[1] would not sufficiently account for the Section 3553(a) factors, particularly the seriousness of the offense, the history and characteristics of the defendant, and the needs to protect the community and promote respect for the law.

     Though the Sentencing Guidelines are advisory, sentencing courts "must consult

---

[1] A sentence of 21 months, where the guidelines range is 24 to 30 months, would require a variance or departure.  To the extent the court construes the defendant's sentencing statement as a motion for a departure or variance, the government asks the court to accept this pleading as the government's opposition to such motion.

1

those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005).  The guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a).  *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  "A sentence is substantively reasonable when the length of the sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case."  *United States v. Martinez-Barragan*, 545 F.3d 894, 905 (10th Cir. 2008).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment.  The sentence imposed should also avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

## I.   The Nature and Circumstances of the Offense Warrants a Significant Sentence

This is not a typical felon-in-possession case.  The defendant came to the attention of the FBI based on reports about his white supremacy ideology, illegal possession of firearms, and statements of intent to commit additional crimes in furtherance of his ideology.  *See generally* PSR, Doc. 43, at ¶ 17-18.  Between October 2022 and the defendant's arrest on May 4, 2023, an FBI Confidential Human Source

2

(CHS)[2] spent considerable time with the defendant and recorded many hours of audio and video.  *Id.* ¶¶ 20-28.  CHS recordings corroborated the defendant's illegal possession of firearms.  *Id.*  They also captured the defendant discussing his ideology and his hatred of Jewish people, in particular.  *Id.* ¶¶ 19, 22, 24.  And they captured the defendant referencing grandiose plans for his rural Cotopaxi property, related to his ideology and interest and skill with firearms.  *Id.* ¶ 24.

On May 4, 2023, the FBI arrested the defendant pursuant to a criminal complaint and executed search warrants at the defendant's Colorado Springs residence and his mountain property in Cotopaxi.  *Id.* ¶ 29.  From the Colorado Springs residence, FBI seized ten firearms of various types and numerous ammunition.  *Id.*  From the mountain property, FBI seized one additional firearm and additional ammunition.  *Id.* ¶ 31.  Nine of the 11 firearms belonged to the defendant.  *Id.* ¶ 30.  All 11 were in his actual or constructive possession.

The defendant has been a prohibited person the majority of his adult life.  Yet he amassed a varied collection of firearms, which he regularly practiced shooting.  The defendant characterizes his crime as a hobby, Doc. 42 at 6, but it is plain that the defendant's interest in firearms was far more dangerous than he would have this court believe.  His offense conduct, particularly in the context of his history and ideology, discussed further herein, warrants a top of the guidelines sentence.

## II.    The History and Characteristics of the Defendant Supports a Sentence at the Top End of the Guidelines

The history and characteristics of the defendant underscore the need for a

---

[2] The identity of the CHS, and discovery related to the CHS, was disclosed to the defense under a Protective Order.

significant sentence in this case.  The defendant is a white supremacist with a criminal history of possessing explosive devices, a fascination with firearms, and expressed visions of utilizing his mountain property and his firearms skills to further disseminate his hateful and dangerous beliefs, in conjunction with weapons training.

*The defendant's violent white supremacy ideology*

The defendant insists that he is entitled to his hateful beliefs and should not be punished for them.  Doc. 42, at 5-6.  To be clear, the defendant's conviction is for his illegal possession of firearms.  And the defendant is, indeed, entitled to his beliefs, dangerous and hateful though they may be.  But this court nonetheless may, and should, consider the defendant's ideology in determining his sentence.  The Tenth Circuit has held that "a court may impose a sentence 'based on' a defendant's protected beliefs as long as those beliefs are 'relevant to the issues involved.'"  *United States v. DeChristopher*, 695 F.3d 1082, 1098–99 (10th Cir. 2012) (quoting *Dawson v. Delaware*, 503 U.S. 159, 164 (1992)); *see also United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) ("No limitation" should be placed on "the information concerning the background, character, and conduct of a person . . . for the purpose of imposing an appropriate sentence." (quoting 18 U.S.C. § 3661)).  The defendant's ideology is relevant to his history and characteristics and to the danger he poses to society.

During the execution of the search warrants, agents also observed and photographed various paraphernalia and propaganda related to white supremacy and Nazism, at both premises.  As the PSR recounts, the defendant's collection included the book Mein Kampf, written by Adolf Hitler, other publications associated with white supremacy and extremism, and a black flag displaying double "SS" lightening bolts, an

image commonly associated with neo-Nazism.[3]  PSR ¶ 31.  Perhaps most concerning, in the defendant's Colorado Springs residence, agents found a flyer—a piece of propaganda—with pictures of various Congressmen and Senators with images of the Star of David on their foreheads.  The placement of the Stars of David are suggestive of firearms bullseye targets calling for head shots.  At the top of the flyer is a drawing of a firearm and the words "EVERY SINGLE ASPECT OF GUN CONTROL IS JEWISH."  At the bottom of the flyer are two biblical citations that have been used by antisemites to justify antisemitism and violence.[4]  The flyer was found inside of a clear plastic bag, with grains of dry rice, as if the defendant wished to preserve it, but still be able to view it. This piece of hateful and violent propaganda was found on the defendant's bedside table, along with one of the nine firearms recovered from the residence.[5]

The flyer the defendant kept on his bedside table advocates not just bias or hate, it promotes violence.  The defendant may attempt to characterize his views as merely unsavory, *see* Doc. 42, at 5-6, but this flyer demonstrates the type of violent ideology that informs the defendant's beliefs.  The defendant's ideology is relevant to this court's sentencing determination and supports a significant sentence.

---

[3] *See* Anti-Defamation League, Hate Symbol, SS Bolts, *available at* https://www.adl.org/resources/hate-symbol/ss-bolts (last visited Jan. 23, 2024).

[4] *See* Anti-Defamation League, Glossary of Extremism and Hate, Synagogue of Satan, *available at* https://extremismterms.adl.org/glossary/synagogue-satan (last visited Jan. 23, 2024); Anti-Defamation League, Deadly Shooting at Pittsburgh Synagogue, *available at* https://www.adl.org/resources/blog/deadly-shooting-pittsburgh-synagogue (last visited Jan. 23, 2024).

[5] Photographs of this flyer and the conditions in which it was found will be filed as Exhibits 1, 2, and 3 to this pleading.  The government will move to restrict those exhibits so as to avoid further disseminating this propaganda.

*The defendant's criminal history*

This is the defendant's second federal felony conviction.  His first was for possession of destructive devices, specifically pipe bombs.  PSR ¶ 48.  The defendant was sentenced to 48 months of imprisonment, followed by three years of supervised release.  *Id.*  He eventually had his supervised release revoked after making violent threats and was sentenced to an additional 12 months of imprisonment.  *Id.*  The defendant's conviction followed an arrest and ultimately lenient plea bargain for similar behavior.  *Id.* ¶ 47.  To be fair, these convictions occurred more than 20 years ago.  And the defendant highlights his minimal more recent criminal history in asking this court for leniency.  Doc. 42, at 3.  But based on the investigation and the content of the defendant's firearm collection, the defendant was likely breaking the law for quite some time.  He just did not get caught until now.

Further, it is concerning in the context of this case that the defendant has a history of explosives offenses, even if those convictions are not recent.  It is further concerning that a sentence longer than the top end of the guidelines range for this offense did not deter the defendant from continuing to engage with weapons and violate the law.  The defendant's criminal history is yet another factor that calls for a significant sentence in this case.

### III.   A Sentence at the Top of the Guidelines Range is Necessary to Protect the Community, Promote Respect for the Law, and Provide Just Punishment.

There can be no doubt that the defendant poses a danger to those he hates.  White supremacy is dangerous, and it flouts our rule of law.  The defendant spent his free time weapons training and collected both firearms and white supremacy

propaganda. He has a history of making explosives. He spoke of using his skills and his property to spread his hateful ideology and teach others to use weapons.  His idea of a keepsake worth preserving and storing on his bedside table amounts to an endorsement of violence against Jewish politicians.

The sentence imposed in this case must reflect the danger posed by the defendant and his ideology. A sentence at the top of the guidelines is necessary to protect the community, promote respect for the law, and provide just punishment.

### Conclusion

A sentence of 30 months of imprisonment, followed by three years of supervised release, is sufficient but not greater than necessary to fairly reflect the factors to be considered under 18 U.S.C. § 3553(a).


Respectfully submitted this 23rd day of January, 2024.


COLE FINEGAN
United States Attorney

By:  s/Julia Martinez
Julia Martinez
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:   Julia.Martinez@usdoj.gov
Attorney for Government

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of January, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

<u>*s/Portia Peter*</u>
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Email: Portia.peter@usdoj.gov